IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |
|---|---|
| DYERSBURG FAMILY WALK-IN CLINIC, INC.,<br>    Plaintiff,<br><br>v.<br><br>TENNESSEE DEPARTMENT OF FINANCE AND ADMINISTRATION:<br>BUTCH ELEY, in his official capacity as Commissioner of the Tennessee Department of Finance and Administration;<br>BUREAU OF TENNCARE; and<br>STEPHEN SMITH, in his official capacity as Deputy Commissioner and Director of The Bureau of TennCare,<br><br>    Defendants. | No. 1:20-cv-1280-STA-jay |

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants' Motion to Dismiss (ECF No. 14) filed on January 11, 2021. Plaintiff, Dyersburg Family Walk-In Clinic, Inc., has filed a response in opposition. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED in part**. The Court declines to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and transfers venue pursuant to 28 U.S.C.A. § 1406(a).

## BACKGROUND

Plaintiff is a Tennessee corporation that owns and operates rural health clinics in Dyersburg, Dresden, and Union City, Tennessee – cities located in the Western District of Tennessee. Defendant Howard "Butch" H. Eley is the Commissioner of the Tennessee Department of Finance and Administration and is based in Nashville, Tennessee. Defendant

Stephen Smith is the Deputy Director of TennCare and is based in Nashville, Tennessee. Defendants Tennessee Department of Finance and Administration and the Bureau of TennCare are based in Nashville, Tennessee. Nashville is a city located in the Middle District of Tennessee.

This matter essentially concerns Defendants' alleged failure to pay "wraparound payments" that Plaintiff was entitled to receive for treating Medicaid eligible patients. The clinics that Plaintiff operates submit "Quarterly Visit Reports" to the Tennessee Comptroller's Office. The Reports contain the number of eligible Rural Health Clinic visits and the amount of payments the clinics received from TennCare MCOs. In response to the Reports, the Tennessee Comptroller's Office is required to make quarterly wraparound payments to the clinic according to the number of Rural Health Clinic visits multiplied by the per-visit rates less the TennCare MCO payments. Plaintiff claims that Defendants failed to make wraparound payments on eligible RHC visits pursuant to TennCare MCO policies that were allegedly irrelevant to whether the state of Tennessee was federally mandated to make the payments. This failure, Plaintiff argues, constitutes a continuing violation of federal Medicaid payment requirements applicable to rural health clinics under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., 42 U.S.C. § 1320a-2, and 42 U.S.C. § 1983.

In its Motion to Dismiss, Defendants argue that the Court should dismiss this matter for improper venue or, conversely, transfer venue to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1406(a). Defendants first argue that "a substantial part of the events or omissions giving rise to the instant claim occurred" in the Middle District of Tennessee, and not in the Western District of Tennessee, making venue in this district improper. 28 U.S.C. § 1391(b)(2). They further argue that, even if the Court finds that venue is proper in

2

the Western District, the case should nonetheless be transferred to the Middle District for the convenience of the parties and the interests of justice.

In their opposition, Plaintiff argues that the Western District does have substantial connections to its claims. As Plaintiff submits, but for the services provided in the Western District by Plaintiff's clinics located in the Western District, Defendants would not have communicated with Plaintiffs or sent payments to the Western District. Moreover, the communications were not one-way – Defendants acted upon communications and reports sent from and created in the Western District. Plaintiff also argues that transfer is inappropriate for the equitable reasons cited by the Defendants because forum in the Middle District is equally as inconvenient to Plaintiff as forum in the Western District is for Defendants. Consequently, transfer would only accomplish an improper shifting of equal inconvenience from one party to the other. Finally, should the Court find that venue is not appropriate in the Western District, Plaintiff asks that the Court not dismiss the case, but transfer it to the Middle District.

## ANALYSIS

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56, 134 S. Ct. 568, 577, 187 L. Ed. 2d 487 (2013). The three categories are: (1) a judicial district in which any defendant resides, if all defendants are residents of the State

3

in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b).  Here, parties concede that venue under § 1391(b)(1) and § 1391(b)(3) is not contested because Defendants all reside in the Middle District of Tennessee.  The central conflict then revolves around § 1391(b)(2) and whether a "substantial part of the events or omissions giving rise to the claim occurred" in the Western District.

The Sixth Circuit has interpreted § 1391(b)(2) as not requiring that a plaintiff file a complaint in the district where the *most* substantial events giving rise to the claim occurred. Instead, according to the plain language of the statute, venue is proper in "any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 263 (6th Cir.1998).  As a result, venue may be proper in two or more districts.  The Court finds that the instant dilemma is illustrative of that reality – both sides make compelling cases for why venue is appropriate in these adjoining districts.  It is instructive therefore to analyze the facts of this case beginning with the overarching purpose of the venue rules which is generally to protect defendants against the risk that a plaintiff will select an unfair or inconvenient place of trial.  *See Leroy v. Great Western United Corp.,* 443 U.S. 173, 183, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Pioneer Surgical Technology, Inc. v. Vikingcraft Spine, Inc.,* 2011 WL 64239 (W.D.Mich. Jan. 7, 2011),  *2 *quoting, Cottman*

4

*Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir.1994).  Notwithstanding these protections for the defendant, in resolving venue questions, courts "must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff*." Gone To The Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 537 (W.D. Tenn. 2006) (finding that venue was proper in the Western District of Tennessee because underlying arbitration agreement referenced and transferred control of properties in the district, plaintiff had its principal place of business in the district, *and* all notices, communications, and deliveries relating to the agreement were sent to the Western District)(emphasis added).

Plaintiff has the burden of proof of showing that venue in this district is appropriate.  *Id*. In support of its bid to stay in the Western District, Plaintiff centers its arguments around a "but for" theory of causation that posits that the events that took place in the Western District were necessary conditions for Defendants' decisions now at issue. Essentially, Defendants' decisions are inextricably linked with events in the Western District and those events therefore gave rise to Plaintiff's claim.  An examination of Plaintiff's claim belies that characterization.  According to the Complaint, Plaintiff brings a singular claim against Defendants for violations under the payment provision in 42 U.S.C. § 1396(a)(bb).  The issues set out in Plaintiff's claim are not centered merely on a challenge to Defendants' decisions relating to Plaintiff's individual RHC payments.  Rather, they challenge Defendants' administration of the TennCare program and their program requiring eligible RHC visits to have been first paid by MCOs writ large.  This broad challenge necessarily encompasses more than the events in the Western District – they would affect RHCs throughout Tennessee.  The central issue in this case revolves around the Medicaid wraparound payment practices and policies of Defendants.  Those practices and policies were

5

created and implemented in the Middle District of Tennessee. Furthermore, the Comptroller's Office performed all of the review and decision making regarding wraparound payments to the Plaintiff in Nashville. TennCare distributed payment from its Nashville office. Defendants did not travel to the Western District and they do not have offices there. To the extent that Plaintiffs argue that communications from Defendants to the Western District establishes substantial contacts in that venue, the argument cuts both ways, because the payments and communications originated in the Middle District. For the above-discussed protections afforded to defendants in § 1391 to be meaningful, "the adjective 'substantial' must be taken seriously. *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir.2005). And 'giving rise to the claim' must mean more than simply 'but for' causation. *See Financial Management Services, Inc. v. Coburn Supply Co., Inc.,* 2003 WL 255232, at *2 (N.D.Ill. Feb.5, 2003); *Caudill v. Keller Williams Realty Int'l, Inc.*, No. 11 C 1140, 2011 WL 4007727, at *3 (N.D. Ill. Sept. 7, 2011). The instant case centers around policies and practices of the Defendants that led to the nonpayment of the Plaintiff. Therefore, where the events truly giving rise to Plaintiff's claim, events which existed independently of the Plaintiff and were not created in response to the Plaintiff or the actions of the Plaintiff, were centered in the Middle District, that is where venue is appropriate. Based on Plaintiff's Complaint, a substantial part of the events giving rise to Plaintiff's claim did not occur in the Western District.

Assuming *arguendo* that venue could have been brought in the Western District, transfer of venue to the Middle District is in the interests of justice. Pursuant to 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court is granted broad discretion when deciding a motion to transfer. Among the relevant

6

factors, the Court should consider (1) the convenience of the parties and witnesses, (2) the accessibility of evidence, (3) the availability of process to make reluctant witnesses testify, (4) the costs of obtaining willing witnesses, (5) the practical problems of trying the case most expeditiously and inexpensively, and (6) the interests of justice. *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 30 (1988) (other citations omitted)). The last factor concerns the public interest in transfer, particularly systemic integrity and fairness of transfer. A plaintiff's choice of forum is entitled to deference. *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 524–25 (6th Cir. 2010) (discussing deference owed to a plaintiff's choice of forum in the context of a motion to dismiss for *forum non conveniens*).

Plaintiff wrongly characterizes venue as being equally inconvenient to either party. It is true that travel will be unavoidable in this case. Either Plaintiff or Defendants will have to travel to the adjoining district. However, Defendants would have to shoulder a disproportionately greater burden should this case be held in the Western District. This is, first, because there is a greater number of defendants than the single Plaintiff. Further, based on the subject of this suit, the location of the evidence is likely to be almost entirely in Nashville, where the decisions on wraparound payments and policies were made. Most compellingly, Defendants identify a former employee and "several" auditors as non-party witnesses, all of whom work in the Middle District. *See Smith v. Kyphon, Inc.,* 578 F.Supp.2d 954, 963 (M.D.Tenn.2008) ("[T]he convenience of non-party witnesses, as opposed to employee witnesses, is one of the most important factors in the transfer analysis). While Plaintiff states that "there are likely to be important non-party witnesses in both the Western District and the Middle District," it fails to specify specific witnesses, as

7

Defendants have.  The Court therefore attaches less weight to this conjectural argument.  Based on the foregoing, the case would be most expeditiously and inexpensively tried in the Middle District. Under the circumstances, the Court concludes that Plaintiff's choice of forum notwithstanding, transfer of this case to the Middle District of Tennessee would serve the interests of justice and judicial economy.  Therefore, Defendant's Motion is **GRANTED in part**.  This matter is hereby transferred to the United States District Court for the Middle District of Tennessee for all further proceedings.

    **IT IS SO ORDERED**.

    **s/ S. Thomas Anderson**
    S. THOMAS ANDERSON
    CHIEF UNITED STATES DISTRICT JUDGE

    Date:  April 21, 2021.